IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
October 17, 2017 Session

## STATE OF TENNESSEE v. KATHERINE HART COLLIER

**Appeal from the Circuit Court for Maury County**
**No. 25122     Stella Hargrove, Judge**

### No.  M2017-00511-CCA-R3-CD

The State of Tennessee appeals the Maury County Circuit Court's orders suppressing evidence and dismissing the indictment, which charged the Defendant with driving under the influence (DUI), DUI per se, violating the implied consent law, failure to maintain a motor vehicle within a lane of traffic, and violating the open container law.  On appeal, the State contends that the trial court erred by granting the Defendant's motion to suppress the blood alcohol concentration (BAC) evidence and by dismissing the indictment.  We conclude that the trial court did not err by suppressing the evidence but that the court erred by dismissing the indictment in its entirety.  Although we affirm the dismissal of the indictment count charging DUI per se, we remand the case to the trial court for reinstatement of the remaining charges in the indictment and for further proceedings.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed in Part; Reversed in Part; Case Remanded**

ROBERT H. MONTGOMERY, JR., J., delivered the opinion of the court, in which D. KELLY THOMAS, JR., and TIMOTHY L. EASTER, JJ., joined.

John S. Colley III, Columbia, Tennessee, for the appellant, Katherine Hart Collier.

Herbert H. Slatery III, Attorney General and Reporter; Brent C. Cherry, Senior Counsel; Brent Cooper, District Attorney General; and Adam C. Davis, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

This case involves a March 13, 2016 traffic stop, during which the Defendant was arrested for DUI and related offenses.  The Defendant did not consent to a blood draw in order to determine her BAC level, and as a result, the arresting officer obtained a search warrant from a magistrate to obtain the Defendant's blood for an analysis.  On December 30,

2016, the Defendant filed a motion to suppress, which challenged the validity of the warrant and sought a dismissal the indictment.

## Preliminary Hearing

At the preliminary hearing, Maury County Police Officer Ashton Matheny testified that on March 13, 2016, he saw the Defendant's car drive across the center line and that he followed the Defendant for about one mile. Officer Matheny stated that he saw the Defendant's car drive across the center line several times and that he stopped the Defendant's car at about 7:40 p.m. Officer Matheny said that the Defendant's speech was slurred, that her breath smelled of alcohol, and that two children were in her car. Officer Matheny said that he asked the Defendant if she had been drinking and that she admitted drinking wine at about 4:00 p.m.

Officer Matheny testified that he asked the Defendant to get out of the car, that the Defendant said she did not know why she was stopped, and that the Defendant asked if he were "trying to frame her." Officer Matheny said that he knew the Defendant was the city manager and that he told her he was not trying to frame her. Officer Matheny stated that the Defendant performed the walk-and-turn and the one-leg stand tests and that the Defendant did not follow instructions and performed the tests poorly.

Officer Matheny testified that he arrested the Defendant for DUI, that he drove the Defendant to the hospital, and that the Defendant refused to consent to a blood draw. Officer Matheny said that he took the Defendant to the jail and that he applied for a search warrant. He stated that the magistrate granted the search warrant and that he and the Defendant returned to the hospital for a blood draw.

Officer Matheny testified that the affidavit and search warrant marked "original" listed the time of issuance as "2044 a.m." and that the Defendant's copy of the warrant listed the time of issuance as "2244 p.m." Officer Matheny said that both the original search warrant and the Defendant's copy listed the time of execution as "2100." Officer Matheny said that the warrant was issued at "2044" and that the time discrepancies were clerical errors.

Officer Matheny testified that a form for an affidavit and search warrant was maintained on file, that he printed four forms, and that he filled in each blank on each form. Officer Matheny stated that he provided the four forms to Maury County Magistrate Lawrence Bull and that Magistrate Bull filled in the date and time and signed each form. The State asked Officer Matheny if each form would be "just a little bit different in terms of how they're written," and Officer Matheny said that the wording would be the same on each form but the penmanship would be different.

On cross-examination, Officer Matheny compared the original search warrant with the Defendant's copy and testified that the forms looked identical, noting he "wrote them all." Officer Matheny stated he did not know at the time of the blood draw that the time of issuance on each warrant was different. Officer Matheny said that he did not inform Magistrate Bull after the blood draw that a mistake existed and that he did not know the time entered in the magistrate's logbook had been changed from "2244" to "2044." Officer Matheny stated his copy of the warrant did not reflect a time of issuance.

Officer Matheny testified that the Defendant was unable to walk heel-to-toe during the field sobriety test and that she used her arms for balance, took an incorrect number of steps, and made an improper turn. Officer Matheny said that he asked the Defendant to "imagine a straight line" from the bumper of his police car to the Defendant's car because no roadway line was available. Officer Matheny stated that he did not recall whether the roadway had a center line when he stopped the Defendant's car but conceded the roadway might have had a fog line. Officer Matheny said that the Defendant displayed poor balance on the one-leg stand test.

Officer Matheny testified that he did not believe Magistrate Bull was present when he returned the Defendant to the jail after the blood draw. Officer Matheny stated that the arrest warrants were entered as "2205" in the magistrate's logbook and that Magistrate Bull logged the arrest warrants. On redirect examination, Officer Matheny testified that he filled out each warrant individually after printing the forms from a computer.

Maury County Magistrate Lawrence Bull testified for the defense that he filled in the date and the time of issuance on each search warrant and that he mistakenly circled "a.m." on the original warrant. Magistrate Bull stated that he signed the four search warrants and that he was unaware of the time discrepancies until after the warrant was executed. Magistrate Bull said that he changed the time of issuance in his logbook from "2244" to "2044" while documenting the search warrant and that he immediately caught his error. Magistrate Bull acknowledged that he wrote a time of "2244" on Officer Matheny's affidavit and on the Defendant's copy of the search warrant and that the times were clerical errors.

Magistrate Bull testified that he was present when Officer Matheny arrived at the jail after the blood draw and that he entered the arrest warrants for the Defendant in the logbook at "2205." Magistrate Bull was asked if the original and the copies of the search warrant had to be "identical," and he responded, "I would say so."

The general sessions court found that probable cause existed but refused to rule on the motion to suppress the blood analysis results because the analysis had not yet been

completed. The court, however, opined that the time discrepancies were clerical errors and that Officer Matheny's testimony was credible.

**Motion to Suppress**

Officer Matheny testified that he arrested the Defendant at about 7:30 p.m., that he drove her to the hospital, and that she refused to provide a blood sample. Officer Matheny said that he took the Defendant to the jail and that he left her in the booking area while he applied for a search warrant.

Officer Matheny testified that forms for the affidavit and the search warrant were contained in a "single packet" and that he printed and completed the original forms. Officer Matheny said that he made a copy of the affidavit and search warrant for his and the magistrate's records and that he made a third copy for the Defendant. Officer Matheny stated that he filled in the blanks on the original before making copies with a photocopy machine and that he made one original and three identical copies of the search warrant.

The original affidavit and search warrant were received as an exhibit and reflected "original" written in the top right corner. The Defendant's copy of the search warrant was received as an exhibit and reflected "Defendant" written in the top right corner. Another copy of the search warrant was received as an exhibit but did not reflect a party designation in the top right corner. The magistrate's copy of the affidavit and search warrant was received as an exhibit and reflected "Court" written in the top right corner. Officer Matheny's copy was received as an exhibit and reflected "Officer" written in the top right corner. Officer Matheny stated that his copy of the search warrant appeared to be identical to the copy without a party designation in the top right corner. Officer Matheny said that he took the search warrants to the magistrate and that the magistrate signed them.

Officer Matheny recalled stating at the preliminary hearing that he had filled out each form individually. He testified, though, that he did not have an opportunity to review the documents before the preliminary hearing and that he realized the week before the motion to suppress hearing that he had testified incorrectly at the preliminary hearing.

Officer Matheny testified that the original search warrant listed the time of issuance as "2044," that "a.m." was circled on the form, and that the time of 2044 a.m. did not exist in military time. Officer Matheny stated that the time of issuance on the Defendant's copy of the warrant was "2244" and that "p.m." was circled. Officer Matheny said that the magistrate's copy listed the time of issuance as "2244" and that neither "a.m." nor "p.m." was circled. Officer Matheny stated that his copy did not reflect a time of issuance.

Officer Matheny testified that he did not know why each warrant reflected different times and that he was present when the magistrate signed the warrants. Officer Matheny said that he was not aware of the time discrepancies before the blood draw and that he received a telephone call from the district attorney informing him of the discrepancies before the preliminary hearing.

The magistrate's logbook was received as an exhibit. Officer Matheny testified that the magistrate changed the logbook entry time relative to the search warrant issuance time from "2244" to "2044." Officer Matheny said that after the magistrate signed the search warrants, he took the Defendant to the hospital for the blood draw, and that he took the arrest warrants to Magistrate Bull afterward. Officer Matheny stated that the logbook reflected the time of entry for the arrest warrants as "2205."

On cross-examination, a "complaint card" was received as an exhibit, and Officer Matheny testified that the card was "a time base of events that happened while on-call." Officer Matheny stated that according to the card, the Defendant was in custody at "1940:58" and that they arrived at the hospital at "2003." Officer Matheny said that he and the Defendant returned to the hospital at "2049," that they arrived at the hospital at "2052," and that they arrived at the jail at "2100 and [ten] minutes." The request for a blood draw form was received as an exhibit and reflects a time of "2110 p.m."

Officer Matheny testified that Magistrate Bull wrote the "date, the month and the time" on the original affidavit and search warrant but that Magistrate Bull did not sign or date Officer Matheny's copy of the warrant. Officer Matheny stated that he did not change the time in the magistrate's logbook and that he did not discuss the time discrepancies with Magistrate Bull until after the preliminary hearing.

Officer Matheny testified that he informed the grand jury that he obtained a search warrant and of the results of the blood analysis. Officer Matheny said that he did not address the time discrepancies on the warrants or the magistrate's logbook in the grand jury proceeding. Officer Matheny stated that he thought he was testifying truthfully at the preliminary hearing.

On redirect examination, Officer Matheny testified that he reviewed the preliminary hearing transcript the week before the suppression hearing. Officer Matheny said that the district attorney told him a handwriting expert would be called to testify about whether the forms were originals or photocopies. When asked, "And is it then that you decided that instead of making four originals back on March 13, 2016, you made one and made copies of them," Officer Matheny responded, "Yes sir."

Upon examination by the trial court, Officer Matheny testified that he had sought a search warrant from a magistrate "[m]aybe one time prior." Officer Matheny stated that he left the magistrate's office with the original warrant and all of the copies, except the magistrate's copy, and that he believed the warrants were identical.

Thomas Vastrick, a forensic document examiner and handwriting analysis expert, testified that he reviewed the original affidavit and search warrant, the copies of the affidavit and search warrant, and the magistrate's logbook. Mr. Vastrick stated that he was highly confident that the time in the logbook had been altered and that he was moderately confident that the time was changed from "2244" to "2044." Mr. Vastrick said that the magistrate's, officer's, and the Defendant's affidavits and search warrants were photocopies of the original affidavit and search warrant.

Magistrate Bull testified that he entered the Defendant's search warrant into the logbook directly after he issued the warrant. Magistrate Bull stated that he may have written "2244" in the logbook initially but was unsure. Magistrate Bull said that he did not know when he changed the time to "2044" in the logbook but that he tried to correct a mistake.

Magistrate Bull testified that he signed the original affidavit and search warrant and each copy of the warrant, that he wrote the date and time on each warrant, and that he gave the warrants to Officer Matheny. Magistrate Bull stated that the time on the original affidavit was "2244," that the time on the original search warrant was "2044 a.m.," and that he made a mistake while completing the forms. Magistrate Bull did not recall if he signed the original warrant first but said the time on the Defendant's copy of the search warrant was "2244 p.m." Magistrate Bull stated that his copy of the affidavit showed the time as "2247" but that the time on the search warrant was "2244." Magistrate Bull said that the time discrepancies were clerical errors.

Magistrate Bull testified that he inadvertently wrote the incorrect time in the logbook and that he "obviously made a change in [the logbook] to reflect a timeline that was not – inaccurate." Magistrate Bull denied changing the time of issuance on the search warrants and said that he had no explanation why all of the versions of the affidavits and search warrants were not identical.

On cross-examination, Magistrate Bull testified that he signed each affidavit and search warrant individually and that he changed the time in the logbook from "2244" to "2044" while logging the arrest warrants. Magistrate Bull recalled stating at the preliminary hearing that he changed the time in the logbook as soon as he issued the search warrant but that he could not definitively state when he changed the time. Magistrate Bull said that he did not have a conversation with Officer Matheny about the time discrepancies, that he first

learned of the discrepancies when he received a subpoena, and that the discrepancies occurred because he made a mistake.

Upon examination by the trial court, Magistrate Bull testified that at the time of the hearing, he had been a magistrate for "just over a year" and that the Defendant's search warrant was the first warrant he had issued without any assistance. Magistrate Bull stated that he did not fill in the officer's name on his copy of the search warrant, that his copy of the warrant had a time of issuance of "2244," and that he realized at the preliminary hearing the importance of all of the documents being identical.

Although the trial court filed a written order after the motion hearing, the trial court made limited findings of fact and conclusions of law from the bench. The court noted that Tennessee Rule of Criminal Procedure 41(c)(3)(D) required that a magistrate endorse on the warrant the hour, date, and name of the officer to whom the warrant was delivered for execution. The court found that the officer's name was not filled in correctly on all of the warrants and that the officer's name was left blank on Magistrate Bull's copy. The court found, though, that the mistake was not fatal. The court also found that the time was not exact on each warrant and that the error was fatal because Rule 41(d) required the magistrate to "prepare an original and two exact copies of each search warrant." The court granted the Defendant's motion to suppress the blood analysis results.

The trial court inquired as to whether the State would proceed on the remaining charges if it dismissed the DUI per se charge, and the State said that it could proceed based on Officer Matheny's testimony and a video recording of the Defendant's performance on the field sobriety tests. The court asked the State whether Officer Matheny had the blood analysis results with him during his grand jury testimony, and the State responded affirmatively. The court determined that the State was prosecuting the Defendant based on the indictment and that one of the elements the grand jury focused on during its deliberation was the blood analysis results. The court dismissed the indictment in its entirety.

In the trial court's written order granting the motion to suppress and dismissing the indictment, the court found that at the preliminary hearing, Officer Matheny testified eight times that he made four originals of the search warrant to obtain the Defendant's blood and that he made a clerical error resulting in the warrant showing various times of issuance. The court found, without making a finding regarding Officer Matheny's intent, that based upon his testimony at the suppression hearing, Officer Matheny testified "incorrectly" at the preliminary hearing.

The trial court found that Officer Matheny maintained he had written four originals of the warrant until one week before the suppression hearing at which time he was confronted with a preliminary hearing transcript and Mr. Vastrick's determinations that three of the four were photocopies and that the magistrate's logbook entry had been altered. The court found

that Officer Matheny admitted at the suppression hearing that his preliminary hearing testimony was incorrect.

The trial court found that of the six times Magistrate Bull endorsed the time of issuance, two provided an issuance time of 2244 p.m., two provided an issuance time of 2244, one provided an issuance time of 2044 a.m., and one originally provided an issuance time of 2244 but was changed by Magistrate Bull to 2044. The court found that neither Magistrate Bull nor Officer Matheny could explain satisfactorily how the various times could have been entered on the search warrant copies as a matter of simple negligence or clerical error. The court determined, as a result, that the disparate times in the versions of the search warrant and the logbook were not the result of clerical errors. The court also determined that it was "not impressed" with Officer Matheny's testimony that he might have confused this case with another case in which the photocopy machine was "broken," resulting in his handwriting all four search warrants.

The trial court determined that Magistrate Bull failed to comply with Tennessee Rule of Criminal Procedure 41, requiring the magistrate to endorse upon the search warrant the time of issuance and to prepare an original and two exact copies. Although the court acknowledged the Exclusionary Rule Reform Act, providing that evidence obtained based upon a warrant which included "technical violations" shall not be suppressed, the court found that the discrepancies in the various copies of the warrant "were not the product of mere negligence or clerical error." The court determined that Officer Matheny's and Magistrate Bull's explanations for how the errors occurred and how they attempted to correct them were not credible. The court, likewise, determined that it "cannot afford . . . a 'good faith' exception under the facts of this case." Relying on due process principles and *State v. Spurlock*, 874 S.W.2d 602, 617 (Tenn. Crim. App. 1993), the court determined that Officer Matheny "repeatedly failed to testify truthfully . . . regarding the search warrant used to obtain the Defendant's blood sample" and "used the illegally obtained blood test results to procure [an] indictment." The court granted the Defendant's motion to suppress the evidence and determined that the appropriate remedy was a dismissal of the indictment in its entirety. This appeal followed.

## A.    Motion to Suppress Evidence

The State contends that the trial court erred by granting the Defendant's motion to suppress, arguing that the magistrate's writing the incorrect time of issuance on the copies of the search warrant was a clerical error. The Defendant responds that the trial court properly suppressed the evidence obtained based upon the warrant.

A trial court's findings of fact on a motion to suppress are conclusive on appeal unless the evidence preponderates against them. *State v. Odom*, 928 S.W.2d 18, 23 (Tenn. 1996);

-8-

*State v. Jones*, 802 S.W.2d 221, 223 (Tenn. Crim. App. 1990). Questions about the "credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact." *Odom*, 928 S.W.2d at 23. The prevailing party is entitled to the "strongest legitimate view of the evidence and all reasonable and legitimate inferences that may be drawn from that evidence." *State v. Keith*, 978 S.W.2d 861, 864 (Tenn. 1998); *see State v. Hicks*, 55 S.W.3d 515, 521 (Tenn. 2001). A trial court's application of the law to its factual findings is a question of law and is reviewed de novo on appeal. *State v. Yeargan*, 958 S.W.2d 626, 629 (Tenn. 1997). In reviewing a trial court's ruling on a motion to suppress, this court may consider the trial evidence as well as the evidence presented at the suppression hearing. *See State v. Henning*, 975 S.W.2d 290, 297-99 (Tenn. 1998); *see also State v. Williamson*, 368 S.W.3d 468, 473 (Tenn. 2012).

The Fourth Amendment to the United States Constitution and Article I, section 7 of the Tennessee Constitution "safeguard the privacy and security of individuals against arbitrary invasions of government officials." *Camara v. Municipal Court*, 387 U.S. 523, 528 (1967); *see State v. Hayes*, 337 S.W.3d 235, 251 (Tenn. Crim. App. 2009). Tennessee Criminal Procedure Rule 41 governs the issuance and execution of search warrants. Rule 41(c)(3)(D) states that "[t]he magistrate shall endorse on the search warrant the hour, date, and name of the officer to whom the warrant was delivered for execution." Rule 41(c) provides mandatory "procedural safeguards . . . intended 'to secure the citizen against carelessness and abuse in the issuance and execution of search warrants.'" *State v. Coffee*, 54 S.W.3d 231, 233-34 (Tenn. 2001) (quoting *Talley v. State*, 345 S.W.2d 867, 869 (Tenn. 1961)). The purpose of the magistrate's endorsement required by Rule 41(c) is "to ensure that if a search warrant is executed prior to its issuance, such discrepancy will be apparent on the face of the warrant." *State v. Bobadilla*, 181 S.W.3d 641, 645 (Tenn. 2005).

Rule 41(d) states,

The magistrate shall prepare an original and two exact copies of each search warrant. The magistrate shall keep one copy as a part of his or her official records. The other copy shall be left with the person or persons on whom the search warrant is served. The exact copy of the search warrant and the endorsement are admissible evidence.

Rule 41(g)(1) permits

[a] person aggrieved by an unlawful or invalid search or seizure [to] move the court . . . to suppress any evidence obtained in the unlawful search or seizure. . . . The motion shall be granted . . . if the evidence in support of the motion shows that . . . the search or seizure was made . . . illegally with an invalid

search warrant, or in any other way in violation of the constitutional protection against unreasonable searches or seizures[.]

Rule 41(g)(5) also requires suppression of the evidence if "the magistrate did not . . . make an original and two copies of the search warrant . . . or did not endorse on the warrant the date and time of issuance and the name of the officer to whom the warrant was issued[.]"

The original search warrant reflects a time of issuance of 2044 a.m., which does not exist. The defendant's copy of the warrant, though, reflects a time of issuance of 2244 p.m. The copy retained by Magistrate Bull reflects only 2244. Therefore, copies of the warrant do not comply with Rule 41(d) requiring one original and two exact copies of the search warrant. The State concedes that the warrant and the copies fail to comply with Rule 41(d). We note that the original warrant reflects the warrant was executed at 2100 and that the complaint card reflects that the blood draw was requested at 2110 p.m.

The record supports the trial court's determination that the search warrant failed to comply with Rule 41 because the original and the copies of the warrant are not identical and do not reflect on the face of the documents that the blood draw occurred before the search warrant was issued by the magistrate. Our supreme court has concluded that a warrant must "explicitly show that it was issued then executed." *Bodadilla*, 181 S.W.3d at 645. Based upon this principle, this court has concluded that "[l]ogically, in order to ensure that the warrant is first issued, then executed, not only must the time be endorsed, but the *accurate* time must be endorsed." *Hayes*, 337 S.W.3d at 254 (emphasis in original).

However, the Exclusionary Rule Reform Act, codified after *Bodadilla* and *Hayes*, states the following:

Notwithstanding any law to the contrary, any evidence that is seized as a result of executing a search warrant issued pursuant to . . . Tennessee Rules of Criminal Procedure Rule 41 that is otherwise admissible in a criminal proceeding and not in violation of the constitution of the United States or Tennessee shall not be suppressed as a result of any violation of this part or any violation of Tennessee Rules of Criminal Procedure Rule 41 if the court determines that such violation was the result of a good faith mistake or technical violation made by the law enforcement officer, court official, or the issuing magistrate[.]

T.C.A. § 40-6-108(a) (2014). A good faith mistake or technical violation is defined, in relevant part, as "[a]n unintentional clerical error or clerical omission made by a law enforcement officer, court official or issuing magistrate in the form, preparation, issuance,

filing and handling of copies, or return and inventory of a search warrant[.]" *Id*. § 40-6-108(c)(1).

Although the State argues that the time of issuance discrepancies were mere clerical errors, the trial judge explicitly discredited the Officer Matheny's and Magistrate Bull's explanations how the time discrepancies occurred and how each of them attempted to correct the discrepancies. Questions about the "credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact." *Odom*, 928 S.W.2d at 23. The record reflects inconsistent accounts of how the warrant and the copies were prepared, of when the magistrate and the officer learned of the discrepancies, and of how each attempted to correct the discrepancies.

At the preliminary hearing, Officer Matheny testified that he printed four uniform search warrants and that he completed each form individually. He stated that the original warrant and the Defendant's copy of the warrant were identical, but during cross-examination, he conceded the times of issuance were not identical and denied knowing the magistrate's logbook showed the time of issuance had been modified from 2244 to 2044. At the suppression hearing, though, Officer Matheny testified that he completed the original affidavit and search warrant and subsequently made three duplicates using a photocopy machine. He said that he realized about one week before the suppression hearing that he had testified incorrectly at the preliminary hearing regarding the procedure he followed to make the original and three copies of the warrant. Officer Matheny could not explain the discrepancies in the times of issuance, and he agreed the magistrate's logbook had been modified to reflect a time of issuance from 2244 to 2044. However, Officer Matheny also testified that he received a telephone call from the district attorney informing him of the discrepancies before the preliminary hearing.

Magistrate Bull testified at the preliminary hearing that he signed four search warrants and that he was unaware of the discrepancies until after the warrant was executed. He said that he changed the time of issuance in his logbook from 2244 to 2044 when he initially entered the search warrant into the logbook but that he immediately caught his error. At the suppression hearing, Magistrate Bull was less certain and testified that he did not know when he changed the time of issuance to 2044 and could not explain why the warrants were not identical. On cross-examination, Magistrate Bull testified that he changed the time of issuance in his logbook to 2044 when he entered information relative to the Defendant's arrest warrants. He could not, with any certainty, explain to the trial court when he changed the time in his logbook.

Although the trial court intentionally did not render a finding relative to the intent of the officer and the magistrate, the court determined that neither witness could explain how the discrepancies were the result of negligence or clerical error. The record does not

preponderate against the court's finding in this regard, based upon the court's discrediting the testimony from the magistrate and the officer, the inconsistent testimony provided by each witness, and the absence of a definitive explanation for the discrepancies during the suppression hearing. As a result, the record does not preponderate against the court's determination that the discrepancies were not mere technical violations or good faith mistakes.

Furthermore, the State's reliance on *State v. Pruitt*, 510 S.W.3d 398 (Tenn. 2016), is misplaced. The search warrant in *Pruitt* reflected two dates, October 18 and 19, rendering unclear from the face of the warrant whether it was issued before it was executed. The officer who obtained the warrant testified at the suppression hearing that the warrant was not executed until the magistrate endorsed and issued the warrant. The officer also explained that the time discrepancy could have been due to the late hour at which the warrant was obtained, near midnight, or that the magistrate had simply made a mistake when completing the warrant. *Id*. at 409. Our supreme court concluded that the warrant would have been invalid pursuant to Rule 41 because it was not clear whether the issuance occurred before the execution. *Id*. The court's analysis, though, continued to determine, pursuant to the Exclusionary Rule Reform Act, whether the time discrepancy was a mere technical violation that would have saved an otherwise invalid search warrant. The court noted that the only evidence at the suppression hearing was the warrant itself and the officer's testimony, that the officer testified that the warrant was issued before it was executed, and that the trial court determined the statute validated the search warrant because the discrepancy in the dates was a good faith mistake or technical violation. *Id*. at 418. The *Pruitt* court determined that based upon the limited evidence at the suppression hearing, the credibility of the officer's testimony was critical to the trial court's ruling. *Id*. The *Pruitt* court stated that although the "actual error" was "a textbook example of a clerical error made during the preparation of the search warrant," it was the implicitly credited testimony of the officer that "tend[ed] to show that the clerical error was unintentional." *Id*.

However, in the present case, the trial court discredited the testimony from Officer Matheny and Magistrate Bull that the time discrepancies were simple mistakes and clerical errors, and this court will not disturb those credibility determinations. We note that the trial court found that the officer "repeatedly failed to testify truthfully . . . regarding the search warrant used to obtain the Defendant's blood sample." Similar to *Pruitt*, whether the evidence obtained by the warrant should have been excluded hinges on the credibility of the witnesses. Because the trial court discredited the witness testimony in this case, we conclude that the record supports the trial court's determination that the discrepancies were not the product of negligence, technical violations, or good faith mistakes. As a result, we conclude that the court did not err by suppressing the evidence of the Defendant's BAC level obtained pursuant to a search warrant. The State is not entitled to relief on this basis.

We note that DUI per se is defined as the "unlawful . . . [driving] . . . of any automobile or other motor driven vehicle on any public roads and highways of the state . . . while the alcohol concentration in the person's blood or breath is eight-hundreds of one percent (0.08%) or more[.]" T.C.A. § 55-10-401 (2012). In this case, the State cannot prove beyond a reasonable doubt that the Defendant's BAC was 0.08% or greater at the time of the traffic stop without the blood analysis results. Because we have concluded that the trial court did not err by suppressing the BAC evidence, the court also did not err by dismissing the indictment count alleging DUI per se. We will now consider whether the dismissal of the indictment in its entirety was proper.

## B.      Dismissal of the Indictment

The State also contends that the trial court erred by dismissing the indictment, arguing that the court failed to make findings relative to how the Defendant had been prejudiced in her efforts to present a defense. The State argues that no legal authority supports the court's decision to dismiss the indictment based upon a witness's erroneous testimony to an issue that is irrelevant to any issue at a trial. The Defendant responds that the State's complicity in the conduct of Magistrate Bull and Officer Matheny required a dismissal of the indictment.

"A citizen has the right to due process of law under the Fourteenth Amendment to the United States Constitution and under the 'law of the land' provision of article I, section 8 of the Tennessee Constitution." *State v. Culbreath*, 30 S.W.3d 309, 317 (Tenn. 2000). "[D]ue process is flexible and calls for such procedural protections as the particular situation demands." *Phillips v. State Bd. of Regents*, 863 S.W.2d 45, 50 (Tenn. 1993) (internal citations omitted). A dismissal of an indictment returned by a grand jury is a rarely used remedy, but such remedy may be appropriate when a defendant is denied the constitutional right of due process. *See id*. This court has held that "an indictment may be dismissed 'on a proper showing of grand jury abuse.'" *State v. Charles Raymond*, No. M2000-03083-CCA-R3-CD, 2002 WL 31051628, at *10 (Tenn. Crim. App. Aug. 30, 2002) (quoting *U.S. v. Claiborne*, 765 F.2d 784, 791 (9th Cir. 1985)).

In dismissing the indictment, the trial court found that the Defendant's due process rights were violated because the State "used the illegally obtained blood test results to procure [an] indictment." This court has held that "a grand jury can consider evidence obtained in violation of an accused's constitutional rights notwithstanding the fact the evidence will be inadmissible at the ensuing trial." *State v. Dixon*, 880 S.W.2d 696, 700 (Tenn. Crim. App. 1992). In fact, the "legality of the evidence considered by a grand jury is not subject to judicial review." *Id*. Therefore, we conclude that the trial court erred by dismissing the indictment on the basis that the grand jury considered the suppressed evidence showing the Defendant's BAC level. The Defendant's due process rights were not violated on this basis.

Additionally, the trial court relied, in part, on *State v. Spurlock*, which notes that "the [S]tate's knowing use of false testimony to convict an accused is violative of the right to a fair and impartial trial as embodied in the Due Process Clause of the Fourteenth Amendment to the United States Constitution and Article I, [section] 8 and 9 of the Tennessee Constitution." 874 S.W.2d at 617. However, the court purposefully did not render findings relative to Officer Matheny's and Magistrate Bull's intent. Although the record shows that the court found that the witnesses provided "incorrect" and "false" testimony relative to how the original search warrant and the copies were prepared and that the witnesses could not explain the time discrepancies, no evidence shows that the State knowingly presented false testimony during any proceeding. Likewise, no evidence shows that Officer Matheny or Magistrate Bull knowingly testified falsely. The court found that the witness testimony was not credible, which led to the suppression of the blood analysis results. However, we conclude that the testimony was not unfairly prejudicial to the Defendant in relation to the remaining counts of the indictment and that the court erred by dismissing the indictment in its entirety.

The trial court asked the State during the motion to suppress hearing whether it would proceed to a trial without the blood analysis results. The State responded that it would proceed with the DUI, violating the implied consent law, failure to maintain a motor vehicle within a lane of traffic, and violating the open container law allegations. The State said that the remaining evidence included a video recording of the Defendant's performing the field sobriety tests and Officer Matheny's testimony relative to the traffic stop and to the Defendant's demeanor and performance on the field sobriety tests. This evidence is sufficient to permit the State to continue its prosecution of the remaining charges.

In consideration of the foregoing and the record as a whole, the order of the trial court suppressing the evidence is affirmed. The order of the trial court dismissing the indictment in its entirety is reversed, and the case is remanded to the trial court for dismissal of the DUI per se charge, reinstatement of the remaining charges, and for further proceedings.

_____
ROBERT H. MONTGOMERY, JR., JUDGE